Citation Nr: 1554522 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 12-01 445 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Oakland, California


THE ISSUES

1. Entitlement to service connection for residuals, status post fracture of the neck.

2. Entitlement to service connection for residuals, status post fracture of the thoracolumbar spine.


REPRESENTATION

Veteran represented by: California Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

A. Purcell, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1971 to August 1973. 

This appeal to the Board of Veterans' Appeals (Board) arose from a March 2009 rating decision in which the RO denied service connection for residuals of neck and spine fractures. In March 2009, the Veteran filed a notice of disagreement (NOD). A statement of the case (SOC) regarding service connection for residuals of neck fracture was issued in December 2011, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in January 2012. 

In August 2012, the Veteran testified during a Board hearing held before the undersigned Veterans Law Judge at the RO; a transcript of that hearing is of record. 

In December 2013. the Board remanded the (claim for service connection for residuals of neck fracture) for further development, as well as remanded a claim for service connection for residuals of spine fracture for issuance of an SOC and opportunity to perfect an appeal as to that matter with respect to 
As requested in the December 2013 remand, and as mandated by Manlincon v. West, 12 Vet. App. 119 (1998), an August 2015 SOC was issued regarding the Veteran's claim for service connection for residuals of spine fracture. The Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in September 2015.

This appeal is now being processed utilizing the Veterans Benefits Management System (VBMS) and the Virtual VA paperless, electronic claims processing systems. 

For reasons expressed below, the claims on appeal are, again, being remanded to the agency of original jurisdiction (AOJ). VA will notify the Veteran when further action, on his part, is required.

As a final preliminary matter, the Board notes that the issue of entitlement to a total disability rating based on individual unemployability (TDIU) has been raised by the record in a September 2015 substantive appeal, but has not been adjudicated by the AOJ. Therefore, the Board does not have jurisdiction over this matter, and it is referred to the AOJ for appropriate action. See 38 C.F.R. § 19.9(b) (2015).


REMAND

Although the Board regrets the additional delay, a review of the claims file reveals that further AOJ action on the claims on appeal is warranted. 

A remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with the remand instructions and imposes upon VA a concomitant duty to ensure compliance with the terms of the remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

In the December 2013 remand, the Board directed the AOJ to obtain a VA examination and opinion as to the likelihood that any diagnosed disability of the neck/cervical spine resulted from disease or injury incurred in active service, and particularly the 1971 motorcycle accident. A May 2015 VA examination, conducted by the February 2011 examiner, showed degenerative joint disease changes of the cervical and lumbar spine. The examiner opined that the Veteran's neck/cervical spine disability was less likely than not incurred in or caused by service. However, the examiner appeared to rely on the lack of notation in the hospital and service treatment records, rather than giving full consideration of all pertinent evidence and assertions. See Dalton v. Nicholson, 21 Vet. App. 23, 39-40 (2007). The examiner noted that the Veteran reported that his doctors stated that X-ray findings indicated an old fracture, and the examiner stated that he saw no evidence of that. However, the examiner did not address the September 2008 private treatment note indicating that the Veteran's May 2006 X-ray of the lumbar spine showed degenerative changes related to old trauma, as directed. The examiner concluded that he believed the degenerative joint disease changes to be age-related, but provided no explanation. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (holding that the probative value of a medical opinion comes from its reasoning); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). 

Because the May 2015 VA examiner's opinion is inadequate, there has not been substantial compliance with the Board's prior remand instructions. Thus, the Board finds that remand is necessary to obtain further medical opinion in this regard. See Stegall, supra. 

In addition, the Veteran's thoracolumbar spine service connection claim is now before the Board. While the May 2015 VA examiner noted degenerative joint disease changes in the lumbar spine and opined that these changes were "potentially" age-related, the examiner was not sufficiently definitive, and did not opine, whether any changes in the thoracolumbar spine were as likely as not related to service. Here, as there is no adequate medical opinion addressing the etiology of current neck/cervical spine disability, one should be obtained on remand..
Prior to obtaining further medical opinion evidence on both claims, to ensure that all due process requirements are met, and that the record before the examiner is complete, the AOJ should also undertake appropriate action to obtain all outstanding, pertinent records.

It appears that there may be outstanding service treatment records (STRs) relating to the Veteran's treatment following his motorcycle accident in service. Specifically, the Veteran indicated that he received treatment at Letterman Army Medical Center in the Presidio, San Francisco, California from October 1971 to December 1971 for injuries sustained in the accident. See March 2009 Authorization; see also December 1971 STR (noting admission date of October 1971 and discharge date of December 1971 for oral surgery at Letterman). The identified hospital records are not associated with the claims file. As these records may include information pertinent to the claims on appeal, the AOJ should undertake appropriate action to obtain them, following the current procedures prescribed in 38 C.F.R. § 3.159 (2015).

With respect to post-service VA treatment records, the claims file includes records from the San Francisco VA Medical Center (VAMC) dated up to January 2015. The Board emphasizes that records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462 (1998); Bell v. Derwinski, 2 Vet. App. 611 (1992). Hence, the AOJ should obtain from the noted facility (and any associated facility(ies)) all outstanding, pertinent records of evaluation and/or treatment of the Veteran, to include any records dated since January 2015, following the procedures prescribed in 3.159(c) as regards requests for records from Federal facilities. 

The AOJ should also give the Veteran another opportunity to provide additional information and/or evidence pertinent to the claims on appeal, explaining that he has a full one-year period for response. See 38 U.S.C.A. § 5103(b)(1) (West 2014); but see also 38 U.S.C.A. § 5103(b)(3) (clarifying that VA may make a decision on a claim before the expiration of the one-year notice period). In its letter, the AOJ should specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, any outstanding, pertinent private (non-VA) records. 

Thereafter, the AOJ should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2015).

The actions identified herein are consistent with the duties imposed by the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). However, identification of specific actions requested on remand does not relieve the RO of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the AOJ should also undertake any other development and/or notification action deemed warranted by the VCAA prior to adjudicating the claims on appeal. 

Accordingly, these matters are hereby REMANDED for the following action:

1. Undertake appropriate action to obtain all outstanding service medical records, to include Letterman Hospital treatment records from October 1971 to December 1971. Follow the procedures set forth in 38 C.F.R. § 3.159(c) with respect to requesting records from Federal facilities. All records/responses received should be associated with the claims file.

2. Obtain from the San Francisco VAMC (and any associated facility(ies)) all outstanding records of evaluation and/or treatment of the Veteran dated since January 2015. Follow the procedures set forth in 38 C.F.R. § 3.159(c) with respect to requesting records from Federal facilities. All records/responses received should be associated with the claims file.

3. Furnish to the Veteran and his representative a letter requesting that the Veteran provide information and, if necessary, authorization, to enable it to obtain any additional evidence pertinent to the claims on appeal that is not currently of record. Specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, all pertinent, outstanding private (non-VA) records.

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period).

4. If the Veteran responds, obtain all identified evidence following the procedures set forth in 38 C.F.R. § 3.159 (2015). All records and responses received should be associated with the claims file. If any records sought are not obtained, notify the Veteran and his representative of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken. 

5. After all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the Veteran to undergo an examination of the neck/cervical spine and thoracolumbar spine by an appropriate physician-preferably, one who has not previously examined him.

The contents of the entire electronic claims file (in VBMS and Virtual VA), to include a complete copy of this REMAND, must be made available to the designated physician, and the examination report should include discussion of the Veteran's documented medical history and assertions. All appropriate tests and studies should be accomplished (with all results made available to the examiner prior to the completion of his or her report), and all clinical findings should be reported in detail. 

The examiner should identify all current disability(ies) affecting the areas of the Veteran's neck and cervical spine, and the thoracolumbar spine-to include degenerative joint disease and spinal stenosis-currently present or present at any point pertinent to the current appeal (even if currently asymptomatic or resolved).

Then, with respect to each such diagnosed disability, the physician should offer an opinion, consistent with sound medical principles, as to whether it is at least as likely as not (i.e., a 50 percent or greater probability) that the disability: (a) first manifested in service; (b) manifested to a compensable degree within one year of service discharge (i.e., August 1974); OR (c) is otherwise medically-related to service, to include the 1971 motorcycle accident therein. 

In addressing the above, the examiner must consider all pertinent medical and other objective evidence, o include the March 2001 private treatment X-ray report noting an old compression fracture, the April 2001 private treatment MRI report of the thoracic spine noting multilevel spondylosis changes, the May 2006 private treatment X-ray report of the lumbosacral spine noting that the site of degenerative change and relative sparing of the remaining spine raises the question of sequelae due to prior trauma, the May 2006 private treatment impression of focal degenerative changes at the thoracolumbar junction possibly related to old trauma, the May 2006 private treatment assessment indicating a remote history of multiple trauma including a major trauma in which the Veteran sustained fractures in 1970, and the September 2008 private treatment note indicating that the Veteran's May 2006 X-ray of the lumbar spine showed degenerative changes related to old trauma.

The examiner must also consider and discuss all lay assertions-to include the Veteran's competent assertions as the onset, nature, and continuity of symptoms. If the Veteran's reports are discounted, the physician should clearly so state, and explain why.

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided. In this regard, a discussion of the facts and medical principles involved would be of considerable assistance to the Board. 

5. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. Stegall v. West, 11 Vet. App. 268 (1998). 

7. After completing the requested actions, and any additional notification and/or development deemed warranted, readjudicate the claims on appeal in light of all pertinent evidence (to particularly include that added to the claims file since the last adjudication) and legal authority. 

8. If any benefit sought on appeal remains denied, furnish to the Veteran and his representative an appropriate supplemental SOC that includes clear reasons and bases for all determinations, and afford them the appropriate time period for response. 

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the benefits requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 
action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014). 



______________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of the appeal. 38 C.F.R. § 20.1100(b) (2015).